**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MICHELE A. CORNELIUS,<br><br>                       Plaintiff,<br><br>            vs.<br><br>CVS PHARMACY, INC.,<br>NEW JERSEY CVS PHARMACY, L.L.C.,<br>and SHARDUL PATEL,<br><br>                       Defendants. | Civil Action No.  2:23-cv-01858-SDW-AME<br><br>**Motion Date: June 20, 2023** |

---

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS, OR ALTERNATIVELY TO STAY, AND TO COMPEL
ARBITRATION**

---

> **LITTLER MENDELSON, P.C.**
> One Newark Center
> 1085 Raymond Blvd., 8th Floor
> Newark, New Jersey 07102
> (973) 848-4700
> Attorneys for Defendants

Of Counsel and On the Brief:

        Marcy A. Gilroy, Esq.

TABLE OF CONTENTS

PAGE

I. PRELIMINARY STATEMENT ............................................................................... 1

II. FACTUAL BACKGROUND ................................................................................. 2

    A.    The Arbitration Agreement Between Plaintiff and CVS ....................................... 2

    B.    Plaintiff's Employment Claims Against CVS ...................................................... 6

III. LEGAL ARGUMENT
    PLAINTIFF SHOULD BE COMPELLED TO ARBITRATE HER CLAIMS
    PURSUANT TO THE FEDERAL ARBITRATION ACT ...................................... 7

    A.    The Federal Arbitration Act Mandates Enforcement of Arbitration
            Agreements in the Employment Context. .............................................................. 7

    B.    The Parties' Arbitration Agreement is Valid and Must Be Enforced Under
            the FAA. ................................................................................................................ 10

        1.    Plaintiff and CVS Agreed to Arbitrate Employment-Related
                Claims. .................................................................................................. 11

        2.    The Arbitration Policy Delegates the Gateway Issues to the
                Arbitrator. .............................................................................................. 15

        3.    Even if the Court Were to Decide the Remaining Gateway Issues,
                Plaintiff Must Still Be Compelled to Arbitrate Her Claims.................... 16

IV. CONCLUSION................................................................................................... 19

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allied-Bruce Terminix Cos. v. Dobson*,
    513 U.S. 265 (1995)...................................................................................7, 8

*Antonucci v. Curvature Newco, Inc.*,
    470 N.J. Super. 553 (App. Div. 2022) ...................................................18

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011)......................................................................................8

*AT&T Techs., Inc. v. Communications Workers of America*,
    475 U.S. 643 (1986).....................................................................................9

*Atalese v. U.S. Legal Servs. Grp., L.P.*,
    219 N.J. 430 (2014) ................................................................................9, 12

*Badiali v. N.J. Mfrs. Ins. Grp.*,
    220 N.J. 544 (2015) ....................................................................................9

*Bourgeois v. Nordstrom, Inc.*,
    No. 11-cv-2442 (KSH), 2012 WL 42917 (D.N.J. Jan. 9, 2012) ............12

*Buckeye Check Cashing, Inc. v. Caraegena*,
    546 U.S. 440 (2006)..................................................................................15

*Cangiano v. Doherty Group, Inc.*,
    Docket No. A-3082-19, 2022 WL 1052214 (N.J. App. Div. April 8, 2022)..........................18

*Circuit City Stores v. Adams*,
    532 U.S. 105 (2001).................................................................................7, 9

*Citizens Bank v. Alafabco, Inc.*,
    539 U.S. 52 (2003)......................................................................................7

*Coiro v. Wachovia Bank, N.A.*,
    No. 11-cv-03587, 2012 WL 628514 (D.N.J. Feb. 27, 2012) ..................13

*Cook v. Nordstrom, Inc.*,
    No. 13-cv-5402 (RBK/AMD), 2013 WL 6633522 (D.N.J. Dec. 17, 2013) .......................7, 14

*Cordero v. Fitness International, LLC*,
    No. A-1662-20, 2021 WL 5227256 (N.J. App. Div. Nov. 10, 2021) ....................11

T ABLE OF A UTHORITIES
(CONTINUED)

*Curtis v. Cellco P'ship*,
   413 N.J. Super. 26 (App. Div.), *certif. denied,* 203 N.J. 94 (2010) ........................................13

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985)........................................................................................................8, 10

*Descafano v. BJ's Wholesale Club, Inc.*,
   No. 15-cv-7883 (PGS) (DEA), 2016 WL 1718677 (D.N.J. April 28, 2016)....................13, 14

*First Options of Chicago, Inc. v. Kaplan*,
   514 U.S. 938 (1995)................................................................................................................11

*Flanzman v. Jenny Craig, Inc.*,
   244 N.J. 119 (2020) ..................................................................................................................9

*Forsyth v. First Trenton Indem. Co.*,
   Docket No. L-9185-08, 2010 WL 2195996 (App. Div. May 28, 2010)..................................13

*GAR Disability Advocates, LLC v. Taylor*,
   365 F.Supp.3d 522 (D.N.J. 2019) ..........................................................................................10

*Garfinkel v. Morristown Obstetrics & Gynecology Assocs.*,
   168 N.J. 124 (2001) .............................................................................................................9, 17

*Gilmer v. Interstate/Johnson Lane Corp.*,
   500 U.S. 20 (1991)..............................................................................................................8, 9

*Goffe v. Foulke Mgmt. Corp.*,
   238 N.J. 191 (2019) ..................................................................................................................9

*Goodwin v. Elkins & Co.*,
   730 F.2d 99 (3d Cir. 1984)......................................................................................................11

*Green Tree Fin. Corp.-Ala. v. Randolph*,
   531 U.S. 79 (2000)....................................................................................................................8

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.*,
   716 F.3d 764 (3d Cir. 2013)......................................................................................................7

*Henry Schein, Inc. v. Archer and White Sales, Inc.*,
   -- U.S. --, 139 S. Ct. 524 (2019) ......................................................................................10, 15

*Hojnowski v. Vans Skate Park*,
   187 N.J. 323 (2006) ..................................................................................................................9

TABLE OF AUTHORITIES
(CONTINUED)

PAGE

*Horowitz v. AT&T Inc.*,
   No. 17-cv-4827 (BRM)(LHG), 2019 WL 77331 (D.N.J. Jan. 2, 2019) .................................13

*In re Arbitration between Grover & Universal Underwriters Ins. Co.*,
   80 N.J. 221 (1979) .............................................................................................................17

*Jaworski v. Ernst & Young U.S. LLP*,
   441 N.J. Super. 464 (App. Div.), *certif. denied*, 223 N.J. 406 (2015) ....................................14

*Jayasundera v. Macy's Logistics & Operations*,
   No. 14-cv-7455 (SDW) (SCM), 2015 WL 4623508 (D.N.J. Aug. 3, 2015) ..............12, 13, 14

*Leodori v. CIGNA Corp.*,
   175 N.J. 293 (2003) .....................................................................................................11, 17

*Levy v. AT&T Servs., Inc.*,
   No. 21-cv-11758, 2022 WL 844440 (D.N.J. March 22, 2022).........................................13, 19

*Martindale v. Sandvik, Inc.*,
   173 N.J. 76 (2002) ....................................................................................................9, 11, 14

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985).........................................................................................................8, 10

*Morgan v. Sanford Brown Institute*,
   225 N.J. 289 (2016) .......................................................................................................11, 12

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983)...................................................................................................................8

*MZM Construction Co., Inc. v. New Jersey Building Laborers Statewide Benefit Funds*, 974 F.3d 386 (3d Cir. 2020)...........................................................................11

*Nascimento v. Anheuser-Busch Companies, LLC*,
   No. 2:15-cv-02017(CCC)(MF), 2016 WL 4472955 (D.N.J. Aug. 24, 2016).............10, 12, 14

*Noren v. Heartland Payment Systems, Inc.*,
   448 N.J. Super. 486 (App. Div. 2017) .................................................................................12

*Oscar v. Simeonidis*,
   352 N.J. Super. 476 (App. Div. 2002) .................................................................................15

*Perry v. Thomas*,
   482 U.S. 483 (1987).........................................................................................................7, 8

iv

TABLE OF AUTHORITIES
(CONTINUED)

PAGE

*Quigley v. KPMG Peat Marwick, LLP*,
    330 N.J. Super. 252 (App. Div.), *certif. denied,* 165 N.J. 527 (2000) ....................................14

*Rent-A-Center, W., Inc. v. Jackson*,
    561 U.S. 63 (2010)..........................................................................................................15

*Ricci v. Sears Holding Corp.*,
    No. 14-cv-3136 (RMB/JS), 2015 WL 333312 (D.N.J. Jan. 23, 2015) ...................................14

*Richardson v. Coverall North Am., Inc.*,
    811 Fed. App'x. 100 (3d Cir. 2020)..................................................................................16

*Robert D. Mabe, Inc. v. OptumRx*,
    43 F.4th 307 (3d Cir. 2022) ............................................................................................15

*Rourke v. Herr Foods Inc.*,
    Docket No. A-2567-21, 2022 WL 14688690 (N.J. App. Div. Oct. 26, 2022).........................18

*Sandvik AB v. Advent Int'l Corp.*,
    220 F.3d 99 (3d Cir. 2000)..............................................................................................11

*Sarbak v. Citigroup Global Markets, Inc.*,
    354 F.Supp.2d 531 (D.N.J. 2004) ....................................................................................10

*Schmell v. Morgan Stanley & Co., Inc.*,
    No. 17-cv-13080, 2018 WL 4961469 (D.N.J. Oct. 15, 2018) .................................................13

*Scott v. CVS*,
    No. 22-3314, 2023 WL 3477827 (3d Cir. May 15, 2023) ......................................................16

*Settle v. Securitas Security Servs. USA, Inc.*,
    Docket No. A-0723-22, 2023 WL 2909118 (N.J. App. Div. April 12, 2023).........................18

*Shearson/Am. Express, Inc. v. McMahon*,
    482 U.S. 220 (1987)..........................................................................................................8

*Skuse v. Pfizer, Inc.*,
    244 N.J. 30 (2020) ....................................................................................................9, 11, 14

*Steinberg v. Capgemini America, Inc.*,
    No. 22-cv-489, 2022 WL 3371323 (E.D. Pa. Aug. 16, 2022) ...............................................18

*White v. Samsung Elec. Am., Inc.*,
    61 F. 4th 334 (3d Cir. 2023) ............................................................................................10

TABLE OF AUTHORITIES
(CONTINUED)

PAGE

*Woodruff v. Dollar General Corp.*,
   No. 21-cv-1705-GBW, 2022 WL 17752359 (D. Del. Dec. 19, 2022)....................................18

*Zirpoli v. Midland Funding, LLC*,
   48 F.4th 136 (3d Cir. 2022) ...................................................................................................11

*Zuluaga v. Altice USA*,
   Docket No. A-2265-21, 2022 WL 17256726 (N.J. App. Div. Nov. 29, 2022) ......................18

**Statutes**

15 U.S.C. § 7001(a)(1)...................................................................................................................13

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.* ....................................1, 6, 17

Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021,
   9 *U.S.C.* §402 .......................................................................................................................18

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ...................................................................... *passim*

N.J.S.A. 2A:23B-6(a)........................................................................................................................9

New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.* ........................................ *passim*

N.J.S.A. 12A:12-7(a), (d)...............................................................................................................13

Revised Uniform Arbitration Act, N.J.S.A. 2A:23B-1 *et seq.*........................................................9

**Other Authorities**

American Arbitration AssociationEmployment Arbitration Rules and Mediation
   Procedures, Rule 6(a)...........................................................................................................16

## I.     **PRELIMINARY STATEMENT**

This action arises out of the employment of Plaintiff Michele A. Cornelius (hereinafter, "Cornelius" or "Plaintiff") as a Store Manager at a CVS Pharmacy® retail store in Passaic, New Jersey (CVS Store No. 2724).  In October 2014, Cornelius voluntarily entered into an agreement to arbitrate all workplace legal disputes – an agreement expressly governed by and subject to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* that requires her to arbitrate all claims "arising out of or related to" her employment.  Cornelius reviewed the arbitration policy electronically on or about October 8, 2014 in a password-protected, web-based CVS training database (then called "LearNet"); clicked that she was agreeing to the terms and conditions of the arbitration program; failed to "opt out" of the arbitration program despite being given an additional 30 days to do so; and continued working for CVS thereafter. Based on this reasonable, voluntary process for introducing the arbitration program to Cornelius and other existing employees, Cornelius assented to the arbitration agreement.  As a result, any and all legal claims, disputes, or controversies that Cornelius has against the Defendants must be resolved in final and binding arbitration.

Notwithstanding Cornelius' valid and binding Agreement, she now attempts to avoid arbitration by filing a Complaint in the United States District Court, District of New Jersey. In her Complaint, Cornelius has asserted claims against CVS Pharmacy, Inc. and New Jersey CVS Pharmacy, L.L.C. for gender discrimination (hostile work environment) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.* ("Title VII"), and the New Jersey Law Against Discrimination, *N.J.S.A.* 10:5-1 *et seq.* (the "NJLAD"), and against Shardul Patel for aiding and abetting the alleged NJLAD violation.  [ECF No. 1]  The arbitration agreement plainly encompasses each of Cornelius' claims as they all arise from her employment with CVS. Therefore, the Agreement requires that these claims be resolved through arbitration.

Where, as here, the parties have entered into a legally enforceable agreement to arbitrate their disputes in lieu of litigating them in a court of law, the law requires that the arbitration agreement be enforced.  Accordingly, Defendants respectfully request that the Court compel this case to arbitration under the Federal Arbitration Act, 9 U.S.C. §§ 3 and 4, and dismiss the Complaint, with prejudice.  Alternatively, Defendants respectfully request that the Court stay this action pending arbitration.

## II.   FACTUAL BACKGROUND

### A.   The Arbitration Agreement Between Plaintiff and CVS.

CVS maintains records of its colleagues' participation in training courses administered by CVS using a Learning Management System known as "LearNet."  Each CVS employee has a unique log-in credential and personalized password enabling access to various LearNet courses. *See* Declaration of Robert Bailey ("Bailey Decl."), ¶ 5.

During the week of October 5, 2014, CVS introduced an Arbitration of Workplace Legal Disputes policy ("Arbitration Policy") under which a colleague and CVS each waive the right to pursue employment-related claims in court, agreeing instead to submit such disputes to binding arbitration.  *See* Bailey Decl., ¶ 6 and Exhibit A thereto.  The Arbitration Policy states, in pertinent part,

1.  **Mutual Obligation to Arbitrate**.  Under this Policy, CVS Health (including its subsidiaries) and its Employees agree that any dispute between an Employee and CVS Health that is covered by this Policy ("Covered Claims") will be decided by a single arbitrator through final and binding arbitration only and will not be decided by a court or jury or any other forum, except as otherwise provided in this Policy.  This Policy is an agreement to arbitrate disputes covered by the Federal Arbitration Act (9 U.S.C. §§ 1-16). Employees accept this Policy by continuing their employment after becoming aware of the Policy.

2.  **Claims Covered by this Policy**. Except as otherwise stated in this Policy, Covered Claims are any and all legal claims, disputes or

2

> controversies that CVS Health may have, now or in the future, against an Employee or that an Employee may have, now or in the future, against CVS Health, its parents, subsidiaries, successors or affiliates, or one of its employees or agents, arising out of or related to the Employee's employment with CVS Health or the termination of the Employee's employment.
>
> Covered Claims include but are not limited to disputes regarding . . . leaves of absence, harassment, discrimination, retaliation and termination arising under the Civil Rights Act of 1964, Americans with Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act . . . and other federal, state and local statutes, regulations and other legal authorities relating to employment.
>
> Covered claims also include disputes arising out of or relating to the validity, enforceability or breach of this Policy, except as provided in the section below regarding the Class Action Waiver.

*See* Bailey Decl., ¶ 6 and Exhibit A at 1-2.

Also beginning the week of October 5, 2014, CVS colleagues were invited to participate in a LearNet training course, *Arbitration of Workplace Legal Disputes* (Course No. 800305) ("Arbitration Training Course"), which communicates and educates CVS's colleagues on its Arbitration Policy in a PowerPoint presentation.  *See* Bailey Decl., ¶ 8 and Exhibit B thereto.  The third slide of the Arbitration Training Course contains a link to the *CVS Health Colleague Guide to Arbitration*.  The Arbitration Policy is fully set forth between pages 8 and 9 of the CVS Health Colleague Guide to Arbitration ("Arbitration Policy Guide").  *See* Bailey Decl., ¶ 9 and Exhibits B and C thereto.  A colleague taking the Arbitration Training Course cannot continue past the third slide without clicking the link to display the Arbitration Policy Guide.  *Id.*, ¶ 10.

The Arbitration Policy Guide also educates colleagues on their rights as they relate to arbitration, the manner in which a colleague accepts the terms of the Arbitration Policy, and how to opt out of the Arbitration Policy.  *See* Bailey Decl., ¶ 10.  Specifically, the Arbitration Policy Guide reviewed as part of the Arbitration Training Course provides in relevant part:

**Colleagues' Rights**

The arbitration policy is not meant to discourage or prevent colleagues from filing a complaint with or participating in an investigation by any federal, state or local office or agency, including but not limited to the U.S. Department of Labor, Equal Employment Opportunity Commission or National Labor Relations Board.  (Indeed, to bring certain legal claims, a colleague must file a complaint with one of these agencies first.  The arbitration policy does not affect that obligation.)  CVS Health recognizes and respects colleagues' rights to engage with these public authorities, and, as always, we will not retaliate against any colleague who exercises these legal rights.

Arbitration is a matter of contract between the colleague and CVS Health. Colleagues accept the policy by continuing their employment with CVS Health after becoming aware of the policy.  With that being said, we want colleagues' participation to be voluntary.  Colleagues will be asked to acknowledge and agree to the policy, but from the time that a colleague first views or receives the policy, he or she has thirty days to opt out of the policy. If a colleague opts out, he or she will not be obligated to go to arbitration and can continue to use the traditional court system as before.  Likewise, if a colleague opts out, CVS Health will not be required to arbitrate any disputes it has with that colleague.

**How to Opt Out**

In order to opt out, a colleague must mail a written, signed and dated letter stating clearly that he or she wishes to opt out of the CVS Health Arbitration of Workplace Legal Disputes Policy.  The letter must be mailed to CVS Health, P.O. Box 969, Woonsocket, RI 02895.  In order to be effective, the colleague's opt out notice must be postmarked no later than 30 days after the date the colleague first views or receives the policy.  Please note, sending in a timely notice is the only way to opt out.  A colleague cannot opt out by refusing to complete training or attend meetings about the policy.

CVS Health will not tolerate retaliation against any colleague who decides to opt out.

*See* Bailey Decl., ¶ 10 and Exhibit C at 7.

After reviewing the Arbitration Policy Guide, a colleague must return to the LearNet Arbitration Training Course slides in order to complete the Arbitration Training Course.  *See* Bailey Decl., ¶ 11.  The fifth slide of the Arbitration Training Course, which is viewed by the colleague after clicking through and viewing the Arbitration Policy Guide, instructs the user to

4

click the "Yes" button at the bottom of the slide to confirm acknowledgement of, and agreement to, the statements on that slide.  A colleague has not completed the Arbitration Training Course unless he clicks on that button.  *Id.*, ¶ 12. By clicking the "Yes" button on that fifth slide, the colleague is acknowledging and agreeing to the following, among other statements:

- that I have carefully read the CVS Health Policy, "Arbitration of Workplace Legal Disputes" (the "Policy") and understand that it applies to me;

    …

- that I have the opportunity, for a limited time only, to opt out of the Policy and, by doing so, not be bound by its terms;

- that, to opt out, I must mail a written, signed and dated letter, stating clearly that I wish to opt out of this Policy to CVS Health, P.O. Box 969, Woonsocket, RI 02895, which must be postmarked no later than 30 days after the date I first received or viewed a copy of this Policy;

- that being covered by the Policy and not opting out, I and CVS are obligated to go to arbitration instead of court to resolve legal claims covered by the policy;

    …

- that this electronic communication satisfies any requirement that such communication be in writing; and

- that my click of the "yes" button creates an electronic signature that is legally binding.

*See* Bailey Decl., ¶ 13 and Exhibit B, slide 5 of 6.

Each colleague who was employed by CVS at the time the Arbitration Policy was introduced was notified to complete the Arbitration Training Course through LearNet and by his or her Store Manager.  Once logged onto the Arbitration Training Course, a colleague could print the Arbitration Policy Guide and the Arbitration Policy using CVS-owned equipment and supplies at no cost to the colleague.  *See* Bailey Decl., ¶¶ 14-15.

According to records maintained in LearNet, Plaintiff Michele Cornelius completed her training on the Arbitration Policy on October 8, 2014. As set forth above, Plaintiff was required to click "Yes" on the fifth slide of the training in order to complete the course. By clicking "Yes," she agreed and acknowledged that the Arbitration Policy applied to her but that she had an opportunity to opt-out in the manner described in the Arbitration Training Course and Arbitration Policy Guide. Plaintiff's official Training Transcript reflects that she completed the web-based training (WBT) of the Arbitration Policy on October 8, 2014, *see* Bailey Decl., ¶¶ 16-17, Exhibit D at 1, and the Transcript would not reflect same unless the colleague clicked "Yes" on the fifth slide. CVS did not receive a timely notice from Plaintiff indicating her desire to opt out of the Arbitration Policy. *See* Bailey Decl., ¶¶ 16-18.

**B.** **Plaintiff's Employment Claims Against CVS.**

Despite assenting to arbitration, Cornelius filed a Complaint in this Court on April 3, 2023. *See* ECF No. 1 ("Compl."). Cornelius alleges that she was subjected to a hostile work environment based on her gender in violation of Title VII and the NJLAD. *See* Compl., at ¶¶53-60. She further claims that Shardul Patel aided and abetted the NJLAD violation. *Id.*, at ¶¶61-64. These claims all arise out of Plaintiff's employment with CVS and therefore fall within the scope of the parties' Arbitration Agreement. Accordingly, CVS now moves to dismiss (or stay) this Action and to compel arbitration of Plaintiff's claims.

III.   **LEGAL ARGUMENT**

**PLAINTIFF SHOULD BE COMPELLED TO ARBITRATE HER CLAIMS PURSUANT TO THE FEDERAL ARBITRATION ACT**

Federal and state policies favoring arbitration require enforcement of the arbitration agreement between Plaintiff and CVS and compel Plaintiff to arbitrate his claims here. The United States and New Jersey Supreme Courts have repeatedly adopted a broad reading of the FAA – which explicitly applies to CVS's Arbitration Policy – in enforcing arbitration agreements.  The Arbitration Policy between the parties in this case meets the criteria for a valid arbitration agreement and Plaintiff's claims are directly within its scope.  Accordingly, this Court should dismiss or stay this action and should compel arbitration of Plaintiff's claims.[1]

**A.    The Federal Arbitration Act Mandates Enforcement of Arbitration Agreements in the Employment Context.**

Under the Federal Arbitration Act (FAA), any "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.[2]

---

[1] Because the Complaint does not, on its face, reference the arbitration agreement entered into between Plaintiff and CVS, this Court must apply a summary judgment standard to Defendants' motion to compel arbitration.  *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 774 (3d Cir. 2013); *see also Cook v. Nordstrom, Inc.*, No. 13-cv-5402 (RBK/AMD), 2013 WL 6633522, *1-2 (D.N.J. Dec. 17, 2013).

[2] The term "involving commerce" is interpreted broadly, such that the FAA governs any arbitration agreement that affects commerce in any way. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270-77 (1995); *see also Perry v. Thomas*, 482 U.S. 483, 490 (1987) (the FAA "embodies Congress's intent to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause").  Significantly, and consistent with this broad interpretation, the United States Supreme Court has held that the FAA governs arbitration agreements between local employees and nationwide companies. *See Circuit City Stores v. Adams*, 532 U.S. 105, 121-24 (2001) (arbitration agreement between local store manager and nationwide retailer subject to the FAA); s*ee also Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 57 (2003) (holding that Congress's

The FAA was enacted by Congress "to reverse decades of judicial hostility toward arbitration agreements." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-627 (1985); *see Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 25 (1991); *Allied-Bruce Terminix v. Dobson,* 513 U.S. 265, 272 (1995); *Shearson/Am. Express, Inc. v. McMahon,* 482 U.S. 220, 225-26 (1987). The FAA establishes a "liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 345 (2011) (*quoting Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983)). Indeed, the "principal purpose" of the FAA is to "ensur[e] that private arbitration agreements are enforced according to their terms." *Concepcion,* 563 U.S. at 344.

Guided by the FAA, the United States Supreme Court has repeatedly held that arbitration agreements are to be read liberally to effectuate their purpose. *Moses H. Cone,* 460 U.S. at 25; *Green Tree Fin. Corp.-Ala. v. Randolph,* 531 U.S. 79, 90-91 (2000). Indeed, the FAA requires courts to "rigorously enforce" arbitration agreements. *Perry v. Thomas,* 482 U.S. 483, 490 (1987); *Mitsubishi Motors Corp.,* 473 U.S. at 626; *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 221 (1985). Moreover, because arbitration is a highly favored means of settling disputes, the Court has held that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone,* 460 U.S. at 24-25. A court may not deny arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation

---

Commerce Clause power extended to transaction in that case because, among other things, one of the parties to the transaction "engaged in business throughout the southeastern United States"). Here, the agreement to arbitrate is a transaction "involving interstate commerce" because CVS is a nationwide retailer, with retail locations in all 50 states, the District of Columbia and Puerto Rico. See https://cvshealth.com/about/facts-and-company-information.

that covers the asserted dispute." *AT&T Techs., Inc. v. Communications Workers of America,* 475

U.S. 643, 650 (1986).

In applying the foregoing principles, the United States Supreme Court has held that the

FAA applies to agreements to arbitrate statutory employment-related claims.  In the employment

context, the Supreme Court reiterated the strong public policy in favor of arbitration:

> We have been clear in rejecting the supposition that the advantages
> of the arbitration process somehow disappear when transferred to
> the employment context…. The Court has been quite specific in
> holding that arbitration agreements can be enforced under the FAA
> without contravening the policies of congressional enactments
> giving employees special protection against discrimination
> prohibited by federal law…."

*Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 123 (2001); *accord Gilmer*, 500 U.S. at 25

(ADEA claim was subject to compulsory arbitration).[3]

---

[3] Although the FAA clearly applies to the arbitration agreement, it is worth noting that New Jersey follows the FAA's lead and similarly has a strong public policy favoring arbitration.  *See, e.g., Flanzman v. Jenny Craig, Inc.*, 244 N.J. 119, 133-34 (2020) ("Like the federal policy expressed by Congress in the FAA, 'the affirmative policy of this State, both legislative and judicial, favors arbitration as a mechanism of resolving disputes.'"); *Skuse v. Pfizer*, Inc., 244 N.J. 30, 46-47 (2020) ("The FAA and the NJAA 'enunciate federal and state policies favoring arbitration.'"); *Goffe v. Foulke Mgmt. Corp.*, 238 N.J. 191, 208 (2019) ("New Jersey case law acknowledges the preeminence of the national policy established by Congress through the FAA as well as the Supreme Court's holdings interpreting and implementing that policy."); *Badiali v. N.J. Mfrs. Ins. Grp.*, 220 N.J. 544, 556 (2015) (holding that strong "public policy of this State favors arbitration as a means of settling disputes that otherwise would be litigated in a court."); *Atalese v. U.S. Legal Servs. Grp., L.P.*, 219 N.J. 430, 440 (2014); *Martindale v. Sandvik, Inc.,* 173 NJ. 76, 84-85 (2002) ("[T]he affirmative policy of this State, both legislative and judicial, favors arbitration as a mechanism of resolving disputes."); *Garfinkel v. Morristown Obstetrics & Gynecology Assocs.*, 168 N.J. 124, 131 (2001) ("[O]ur jurisprudence has recognized arbitration as a favored method for resolving disputes.").  Further, the New Jersey Legislature codified its endorsement of arbitration agreements in the Revised Uniform Arbitration Act, N.J.S.A. 2A:23B-1 *et seq.*, which, similar to the FAA, provides that "[a]n agreement…to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract." *N.J.S.A.* 2A:23B-6(a).  The NJRUAA, like the FAA, compels the enforcement of agreements to arbitrate, such as the Arbitration Agreement in this case.  *See Hojnowski v. Vans Skate Park*, 187 N.J. 323, 342 (2006) (noting that Legislature, in enacting the RUAA, codified existing judicial policy

Here, the arbitration agreement at issue is indisputably governed by the FAA.  *See* Bailey Decl., ¶ 7 and Exhibit A, ¶ 1 thereto ("This Policy is an agreement to arbitrate disputes covered by the Federal Arbitration Act (9 U.S.C. §§ 1-16)").

## B.     The Parties' Arbitration Agreement is Valid and Must Be Enforced Under the FAA.

The FAA requires courts to compel arbitration "in accordance with the terms of the agreement" upon the motion of either party to the agreement, consistent with the principle that arbitration is a matter of contract.  9 U.S.C. § 4; *see also Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 217 (1985) (the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues to which an arbitration agreement has been signed") (emphasis in original).  In order to compel a matter into arbitration, a court need only engage in a limited review to determine: (1) whether a valid agreement to arbitrate exists between the parties; and (2) whether the specific dispute falls within the scope of that agreement.  *See Mitsubishi Motors,* 473 U.S. at 626; *see also White v. Samsung Elec. Am., Inc.,* 61 F. 4th 334, 338 (3d Cir. 2023); *GAR Disability Advocates, LLC v. Taylor*, 365 F.Supp.3d 522, 527 (D.N.J. 2019); *Sarbak v. Citigroup Global Markets, Inc.*, 354 F.Supp.2d 531, 538 (D.N.J. 2004); *Nascimento v. Anheuser-Busch Companies, LLC*, No. 2:15-cv-02017(CCC)(MF), 2016 WL 4472955, *2 (D.N.J. Aug. 24, 2016).  In this case, however, the Court need decide only whether the parties agreed to arbitrate; if they have, the remaining gateway issues have been delegated to the arbitrator.  *See Henry Schein, Inc. v. Archer and White Sales, Inc.,* -- U.S. --, 139 S. Ct. 524, 529 (2019) (holding that courts cannot decide arbitrability issues that the parties agreed to submit to arbitration even if "the argument for arbitration is wholly groundless").

---

*favoring arbitration* as a "means of dispute resolution.").

1.      ***Plaintiff and CVS Agreed to Arbitrate Employment-Related Claims.***

Whether the parties have agreed to arbitrate in the first instance is generally an issue for the Court to decide.  *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Zirpoli v. Midland Funding, LLC*, 48 F.4th 136, 141-42 (3d Cir. 2022); *MZM Construction Co., Inc. v. New Jersey Building Laborers Statewide Benefit Funds*, 974 F.3d 386, 397-98 (3d Cir. 2020) (*citing Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 108-109 (3d Cir. 2000)); *Morgan v. Sanford Brown Institute*, 225 N.J. 289, 300 (2016).  Under the FAA, state law principles regarding contract formation determine whether the parties agreed to arbitrate.  *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Goodwin v. Elkins & Co.*, 730 F.2d 99, 108 (3d Cir. 1984). New Jersey courts apply basic contract law principles, including concepts of offer, acceptance and consideration, to determine whether a valid arbitration agreement exists.  *See Martindale v. Sandvik, Inc.*, 173 N.J. 76, 87-88 (2002).  There must be "an explicit, affirmative agreement that unmistakably reflects the employee's assent" to arbitration. *Leodori v. CIGNA Corp.*, 175 N.J. 293, 303 (2003).  Generally, the Court will "determine an agreement's validity by considering the intentions of the parties as reflected in the four corners of the written instrument." *Id.* at 302.  Notably, New Jersey courts have made clear that the same basic contract principles apply to contracts entered electronically, including arbitration agreements in the employment context, and that an electronic 'click' can suffice as an expression of assent.  *See Skuse v. Pfizer, Inc.*, 244 N.J. 30, 41-43 (2020); *Cordero v. Fitness International, LLC*, No. A-1662-20, 2021 WL 5227256, at * 5 (N.J. App. Div. Nov. 10, 2021). Here, the parties clearly and unmistakably entered an agreement that clearly mandates arbitration.

First, there is no question of offer and acceptance.  CVS made an offer to enter into an arbitration agreement when it notified Plaintiff of the Arbitration Policy through the Arbitration Training Course (which she completed on October 8, 2014); made the Arbitration Policy Guide

available to her at no cost; offered her the opportunity to opt-out with express instructions on how to do so; assured her that if she opted out, there would be no repercussion or retaliation; and informed her that, if she did not opt-out, her continued employment would constitute acceptance of CVS's offer to arbitrate.  Plaintiff had the opportunity to accept or reject the offer, with no adverse consequences if she chose to opt-out.  By continuing her employment and choosing not to opt-out, Plaintiff accepted CVS's offer and became bound by the Arbitration Policy, which makes clear that employment claims "will be decided by a single arbitrator through final and binding arbitration only *and will not be decided by a court or jury or any other forum*.  *See* Bailey Decl., Exhibit A, ¶ 1 (emphasis added).  This provision clearly and unmistakably notified Plaintiff that arbitration would be the exclusive forum for resolving employment claims, and that she could not have her claims resolved by a court or jury.  *See Noren v. Heartland Payment Systems, Inc.*, 448 N.J. Super. 486, 495 (App. Div. 2017) ("[n]o magical language is required to accomplish a waiver of rights, and the provision need not 'identify the specific constitutional or statutory right' subject to waiver.") (*citing Morgan v. Sanford Brown Inst.*, 225 N.J. 289, 309 (2016)); *Atalese v. U.S. Legal Servs. Group, L.P.*, 219 N.J. 430, 442-47 (2014); *Nascimento*, 2016 WL 4472955, at *4-5; *Bourgeois v. Nordstrom, Inc.*, No. 11-cv-2442 (KSH), 2012 WL 42917, at *3 (D.N.J. Jan. 9, 2012).

Courts in this District have consistently enforced employment-related arbitration agreements with similar "opt-out" provisions, thereby affirming the opt-out mechanism as a valid method of contract formation.  The courts hold that the "[f]ailure to opt out of an arbitration program after receiving notice is sufficient conduct to signify acceptance" of the offer to enter into an arbitration agreement.  *Jayasundera v. Macy's Logistics & Operations*, No. 14-cv-7455 (SDW) (SCM), 2015 WL 4623508, *4 (D.N.J. Aug. 3, 2015) (*citing Coiro v. Wachovia Bank, N.A.,* No. 11-cv-03587, 2012 WL 628514, *3 (D.N.J. Feb. 27, 2012)); *see also Levy v. AT&T Servs., Inc.,*

No. 21-cv-11758, 2022 WL 844440, at * 4-5 (D.N.J. March 22, 2022); *Schmell v. Morgan Stanley & Co., Inc.,* No. 17-cv-13080, 2018 WL 4961469, at *2 (D.N.J. Oct. 15, 2018); *Descafano v. BJ's Wholesale Club, Inc.*, No. 15-cv-7883 (PGS) (DEA), 2016 WL 1718677, *2-3 (D.N.J. April 28, 2016).

Moreover, it is well-established under New Jersey and federal law that electronic signatures may not be denied legal effect or enforceability simply because of the signature's electronic form. *See* N.J.S.A. 12A:12-7(a), (d); 15 U.S.C. § 7001(a)(1).  Courts have routinely held that electronic acknowledgements, including clicking a link or an agreement box on a website, are sufficient to demonstrate assent to an arbitration agreement. *See, e.g.*, *Forsyth v. First Trenton Indem. Co.,* Docket No. L-9185-08, 2010 WL 2195996 at *6-7 (App. Div. May 28, 2010) (holding "an actual handwritten signature is not necessary" and "a party may manifest assent to a contract by clicking a link on a website"); *Curtis v. Cellco P'ship*, 413 N.J. Super. 26, 32 (App. Div.) (finding "Plaintiff's acceptance of [the arbitration agreement] was confirmed by his electronic signature, as well as his activation and use of the wireless phone service plan"), *certif. denied,* 203 N.J. 94 (2010); *Horowitz v. AT&T Inc.*, No. 17-cv-4827 (BRM)(LHG), 2019 WL 77331, at *9 (D.N.J. Jan. 2, 2019) ("Plaintiffs accepted the terms of the Arbitration Agreement by receiving notice of the agreement, clicking on the link, and failing to opt out within the deadline."); *Jayasundera v. Macy's Logisitics & Operations, Dep't of Human Res.*, No. 14-cv-7455(SDW)(SCM), 2015 WL 4623508, at *4 (D.N.J. Aug. 3, 2015) (granting motion to compel arbitration where plaintiff electronically signed the acknowledgment form); *Ricci v. Sears Holding Corp.*, No. 14-cv-3136 (RMB/JS), 2015 WL 333312, at *4 (D.N.J. Jan. 23, 2015) (granting defendant's motion to compel and explaining that "the fact that there was no handwritten 'signature' required is of no moment.").

Indeed, the New Jersey Supreme Court specifically affirmed the electronic presentation and acceptance of arbitration agreements in the employment context.  In *Skuse v. Pfizer, Inc.*, 244 N.J. 30 (2020), the Supreme Court upheld an arbitration agreement and compelled arbitration of plaintiff's discrimination claims where the arbitration agreement was conveyed to her via email and to which she manifested assent by electronically clicking a button that said "CLICK HERE to acknowledge." *Id*. at 40-41.  The Court determined that the delivery of an arbitration agreement through a company training module, to which employees were alerted through email, was valid and enforceable, even where plaintiff claimed that she did not review the communications. *Id*. at 53-54.

Furthermore, the arbitration agreement is supported by adequate consideration, not only by Plaintiff's continued employment but also by the fact that the agreement contains a *mutual* obligation to arbitrate.  Courts have routinely held that continuation of employment constitutes sufficient consideration to support an agreement to arbitrate.  *See Martindale*, 173 N.J. at 88; *Jaworski v. Ernst & Young U.S. LLP*, 441 N.J. Super. 464, 474 (App. Div.), *certif. denied*, 223 N.J. 406 (2015); *Quigley v. KPMG Peat Marwick, LLP*, 330 N.J. Super. 252, 265 (App. Div.), *certif. denied,* 165 N.J. 527 (2000); *Nascimento*, 2016 WL 4472955, at *4; *Descafano*, 2016 WL 1718677 at *2; *Cook*, 2013 WL 6633522, at *3.  Moreover, the fact that CVS *also* gave up the right to assert employment-related claims in court comprises consideration supporting Plaintiff's promise to arbitrate.  *See Descafano*, 2016 WL 1718677, at *3; *Jayasundera*, 2015 WL 4623508, at *4 (both holding that "mutual" obligation to arbitrate constituted adequate consideration); *see*

14

*also Oscar v. Simeonidis*, 352 N.J. Super. 476, 485 (App. Div. 2002) ("Mutual promises are sufficient consideration one for the other").

In short, there is a valid, enforceable agreement between Plaintiff and CVS to arbitrate all workplace legal disputes, including the statutory claims asserted here.

**2.    *The    Arbitration    Policy    Delegates    the    Gateway    Issues    to the Arbitrator.***

Before reaching the two gateway issues, however, a court must examine the underlying contract to determine whether the parties have agreed to commit the threshold question of arbitrability to the arbitrator. *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other."); *Buckeye Check Cashing, Inc. v. Caraegena*, 546 U.S. 440, 446 (2006) ("the issue of the contract's validity is considered by the arbitrator in the first instance"); *see also Robert D. Mabe, Inc. v. OptumRx*, 43 F.4th 307, 326 (3d Cir. 2022). Where the parties have clearly and unmistakably agreed to delegate issues relating to the enforceability of the agreement to arbitrate to the arbitrator, as they have here, the Court **_must_** send the issue of arbitrability to the arbitrator. *See Henry Schein, Inc.*, 139 S. Ct. at 529 (holding when an arbitration agreement "delegates the arbitrability question to an arbitrator… a court possesses **_no power_** to decide the arbitrability issue.") (emphasis added).

Here, the Arbitration Policy states that Plaintiff and CVS agree to arbitrate any claim covered by the policy, and that such claims include "disputes arising out of or relating to the validity, enforceability, or breach of this Policy." *See* Bailey Decl. ¶ 7 & Exh. A, ¶ 2. This language delegates the gateway issues to the arbitrator, and courts have consistently found clear and unmistakable delegation from similar language. *See, e.g. Scott v. CVS,* No. 22-3314, 2023 WL

15

3477827, at *2 (3d Cir. May 15, 2023) (expressly finding the delegation clause in the CVS Arbitration Agreement covering "disputes arising out of or relating to the validity, enforceability or breach of this Agreement" delegated gateway issues to the arbitrator).  Further confirming the parties' agreement to delegate issues of arbitrability to the arbitrator is the express incorporation of the American Arbitration Association's Employment Arbitration Rules and Mediation Procedures.  *See* Bailey Decl., Exh. A, ¶ 4.c. ("The arbitration . . . will be conducted in accordance with the Employment Arbitration Rules and Mediation Procedures of the AAA.").[4]  The Third Circuit has held that incorporation of the AAA Rules, which empower an arbitrator to decide issues of arbitrability, "is about as 'clear and unmistakable as language can get'" with respect to whether the parties agreed to delegate arbitrability.  *Richardson v. Coverall North Am., Inc.*, 811 Fed. App'x. 100, 103 (3d Cir. 2020).  Because the delegation provision here clearly and unmistakably delegates the gateway issues of arbitrability to the arbitrator, this Court should decline to rule on any challenges to the scope, validity, enforceability, or unconscionability, and instead find that any such challenges are to be resolved by an arbitrator.

**3.    *Even if the Court Were to Decide the Remaining Gateway Issues, Plaintiff Must Still Be Compelled to Arbitrate Her Claims.***

Even if this Court considered the remaining gateway issue – whether the specific dispute falls within the scope of the Arbitration Agreement – the outcome is the same: Plaintiff must arbitrate the claims asserted in this action, and the Court should therefore compel arbitration.

The answer to the question of whether the claims asserted fall within the scope of an arbitration agreement "is found simply by analyzing what the parties have agreed should be

---

[4] Rule 6(a) of the AAA Employment Arbitration Rules and Mediation Procedures provides: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with regard to the existence, scope, or validity of the arbitration agreement."

submitted to arbitration." *In re Arbitration between Grover & Universal Underwriters Ins. Co.*, 80 N.J. 221, 229 (1979).  In *Garfinkel*, the New Jersey Supreme Court stated:

> The Court will not assume that employees intend to waive those [NJLAD] rights unless their agreements so provide in unambiguous terms.   That said, we do not suggest that a party need refer specifically to the LAD or list every imaginable statute by name to effectuate a knowing and voluntary waiver of rights.   To pass muster, however, a waiver-of-rights provision should at least provide that the employee agrees to arbitrate all statutory claims arising out of the employment relationship or its termination.   It should also reflect the employee's general understanding of the type of claims included in the waiver (e.g., workplace discrimination claims).

168 N.J. at 135.  The Arbitration Policy easily meets this standard, and clearly and unambiguously covers Plaintiff's NJLAD and Title VII claims.

Indeed, the Arbitration Policy expressly states that, "Covered Claims" that are subject to arbitration include "any and all legal claims, disputes, or controversies" that plaintiff may have "against CVS Health, its parents, subsidiaries, successors, or affiliates, or one of its employees or agents, arising out of or related to [her] employment…or the termination of [her] employment" including but not limited to "disputes regarding…discrimination, retaliation, and termination arising under the Civil Rights Act of 1964… and other federal, state and local statutes, regulations and other legal authorities relating to employment." *See* Bailey Decl. ¶ 7 & Exh. A, ¶¶ 1-2.  The Agreement manifests an unambiguous intention to arbitrate NJLAD and Title VII claims.  *See Leodori*, 175 N.J. at 302-303.  Thus, the claims set forth in Plaintiff's Complaint fall squarely within the scope of her valid and enforceable Arbitration Agreement.

Nevertheless, Plaintiff may argue that N.J.S.A. 10:5-12.7 ("Section 12.7") prevents the arbitration of her NJLAD claims.  Section 12.7 is an amendment to the NJLAD signed into law on March 18, 2019, that purports to ban all pre-dispute arbitration agreements in contracts that are

entered into, revised, or amended after that date. Subsection (a) of Section 12.7 makes unenforceable any provision in an employment agreement that "waives any substantive or procedural right" under the NJLAD. N.J.S.A. 10.5-12.7(a). Similarly, subsection (b) of Section 12.7 provides that no right or remedy under the NJLAD or any other statute or case law may be prospectively waived. N.J.S.A. 10.5-12.7(b).  However, this argument is flawed and must be rejected because it ignores the fact that Section 12.7 is preempted by the FAA and is, therefore, invalid as New Jersey's courts have consistently found. *See Zuluaga v. Altice USA*, Docket No. A-2265-21, 2022 WL 17256726, at *5 (N.J. App. Div. Nov. 29, 2022) ("'When state law prohibits outright the arbitration of a particular type of claim,' the conflicting state law is pre-empted by the FAA") (*citing Antonucci v. Curvature Newco, Inc.*, 470 N.J. Super. 553, 564-65 (App. Div. 2022)); *Cangiano v. Doherty Group, Inc.*, Docket No. A-3082-19, 2022 WL 1052214, at *2-5 (N.J. App. Div. April 8, 2022) (finding Section 12.7 preempted by the FAA).

Likewise, Plaintiff may also argue that the recently enacted Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021, 9 *U.S.C.* §402(a) ("EFAA"), bars arbitration of her claims. Once again, however, the argument fails, as the EFAA by its terms only applies to a "dispute or claim that arises on or after the date of enactment of this Act," which was March 22, 2022.  9 U.S.C. §402; *see also Woodruff v. Dollar General Corp.,* No. 21-cv-1705-GBW, 2022 WL 17752359, at *3-4 (D. Del. Dec. 19, 2022); *Steinberg v. Capgemini America, Inc.*, No. 22-cv-489, 2022 WL 3371323, at *2-3 (E.D. Pa. Aug. 16, 2022); *accord Settle v. Securitas Security Servs. USA, Inc.,* Docket No. A-0723-22, 2023 WL 2909118, *3-5 (N.J. App. Div. April 12, 2023), *Zuluaga*, 2022 WL 17256726, at *5, and *Rourke v. Herr Foods Inc.*, Docket No. A-2567-21, 2022 WL 14688690, at *3 (N.J. App. Div. Oct. 26, 2022) (all rejecting arguments that the EFAA should be applied retroactively to allow plaintiffs to proceed with sexually hostile work environment

claims pursuant to Section 12.7 of the NJLAD).[5] Here, because the EFAA does not apply

retroactively, it cannot save Plaintiff from arbitration.

IV.     **CONCLUSION**

For the foregoing reasons, Defendants CVS Pharmacy, Inc., New Jersey CVS Pharmacy,

L.L.C. and Shardul Patel respectfully request that the Court grant their motion to dismiss, or

alternatively to stay judicial proceedings, and compel arbitration of Plaintiff's claims

DATED: May 23, 2023                          Respectfully submitted,

                                             **LITTLER MENDELSON, P.C.**
                                             One Newark Center
                                             1085 Raymond Blvd., 8th Floor
                                             Newark, New Jersey 07102
                                             Main: (973) 848-4700
                                             Direct: (973) 848-4734
                                             Fax: (973) 556-1691
                                             Email: MGilroy@littler.com
                                             *Attorneys for Defendants*
                                             *CVS Pharmacy, Inc., New Jersey CVS*
                                             *Pharmacy, LLC and Shardul Patel*

                                  By:     s/ Marcy A. Gilroy
                                          MARCY A. GILROY

---

[5] The EFAA also does not apply here because Plaintiff does not allege sexual assault or sexual harassment, but rather gender discrimination. *See, e.g., Levy v. AT&T Servs., Inc.*, No. 21-11758(FLW), 2022 WL 844440, at *1 n.1 (D.N.J. March 22, 2022) (finding the Act inapplicable to age discrimination claims).

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, a member in good standing of the bar of the United States District Court

for the District of New Jersey, hereby certifies that on May 23, 2023, she caused to be served a

true and correct copy of the within Memorandum of Law by ECF to Plaintiff's counsel as follows:

Alex G. Leone, Esq.
LEONE LAW LLC
195 Maplewood Avenue
Suite 1, P.O. Box 1274
Maplewood, New Jersey 07040
alex@juvenilejusticeattorney.com

*Attorney for Plaintiff Michele Cornelius*

s/ Marcy A. Gilroy
MARCY A. GILROY

Dated: May 23, 2023

20