**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHELE A. CORNELIUS,<br><br>       Plaintiff,<br><br>vs.<br><br>CVS PHARMACY, INC.,<br><br>NEW JERSEY CVS PHARMACY, L.L.C., and SHARDUL PATEL,<br><br>       Defendants. | Civil Action No. 23-01858 (SDW) (AME)<br><br>**OPINION**<br><br>October 18, 2023 |

**WIGENTON**, District Judge.

  Before this Court is CVS Pharmacy, Inc., New Jersey CVS Pharmacy, L.L.C., and Shardul Patel (collectively "Defendants") Motion to Dismiss, or Alternatively to Stay, and to Compel Arbitration (D.E. 9 ("Motion")) Plaintiff's Complaint (D.E. 1) for failure to comply with the arbitration clause contained in the Employment Agreement and pursuant the Federal Arbitration Act, 9 U.S.C. §§ 3 and 4.  Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1367.  Venue is proper pursuant to 28 U.S.C. § 1391(b)(2).  This opinion is issued without oral argument pursuant to Rule 78.  For the reasons stated herein, Defendants' Motion is **GRANTED**.

**I. FACTUAL HISTORY**

  Michelle Cornelius worked for Defendants for forty years since starting as a cashier in 1982 until her resignation in 2021.  (D.E. 1 ¶¶ 9 & 21.)  She was promoted to store manager in 1994 and throughout her employment, had no recorded performance criticisms.  (*Id.* ¶ 10.)  In

2017, she was promoted to store manager at the CVS location in issue and the following year that store "accomplished the highest percentage above budget and for profit for the year of 2018." (*Id.* ¶ 11–12.)  In 2018, Shardul Patel became Plaintiff's supervisor and allegedly "began to target Plaintiff with severe and pervasive negative treatment, intentionally because she is a woman[.]" (*Id.* ¶ 15).  He did this by allegedly: denying her promotions and pay increases based on suspect "'performance deficiency,' while promoting a male employee who exhibited the same 'performance deficiency;'" permitting a male employee to "engage in conduct and receive benefits that he denied her;" replacing her "with a man while she was still on the job;" dismissing her questions or concerns "with disrespectful responses;" abusing her "with rude and unnecessary text messages outside of working hours and expecting immediate responses;" "sending employees of the [s]tore to other CVS locations when [he] knew that [she] needed those employees," that resulted in "intentionally overworking [her], sometimes over 80 hours a week;" "destroying morale and undermining [her] with employees she managed by refusing to grant reasonable raises she approved for those employees;" "minimizing [her] needs as an adult outside of work, such as by saying, 'I don't need excuses' when [she] informed [him] that 'after 10 hours of work, [she] went home to take care of [her] husband,'" who CVS knew had cancer; and "pressuring [her] to shovel snow during a blizzard."  (*Id.* ¶ 15 (a–i).)  Plaintiff asserts that in these and other ways, Defendants demeaned her and treated her "like a child, as less than an adult worthy of respect."  (*Id.* ¶ 15 (j).)  She asserts that Patel's behavior left her with no choice but to resign from CVS and to take a lesser-paying job elsewhere.

During her employment, Plaintiff met with Robert Brauer, the CVS Regional Manager who supervised Patel, to inform him of her grievances but no action was taken to rectify the situation. (*Id.* ¶ 32–36.)  She continued to raise concerns going so far as to contact the Chief Compliance

2

Officer for CVS to express her concerns about her treatment and workplace hostility, but she never received a response and there was never an investigation into her allegations. (*Id.* ¶ 40–44.)

## II. PROCEDURAL HISTORY

On April 3, 2023, Plaintiff filed her three-claim complaint alleging: (1) CVS's violation of Title VII by mishandling her complaints and subjecting her to severe and pervasive intentional sex-based discrimination (Count One); (2) CVS's violation of the New Jersey Law Against Discrimination (Count Two); and (3) Patel's aiding and abetting CVS's violation of the New Jersey Law Against Discrimination (Count Three). (D.E. 1.) Defendants now move to dismiss the Complaint for failure to comply with the arbitration clause contained in the Employment Agreement and pursuant the Federal Arbitration Act, 9 U.S.C. §§ 3 and 4. (D.E. 9.) The parties timely completed briefing. (D.E. 11 &14.)

## III. LEGAL STANDARD

"[W]hen it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." *Guidotti v. Legal Helpers Debt Resolution, LLC*, 639 Fed.Appx. 826 (3d Cir. 2016).

When considering a motion to dismiss under Rule 12(b)(6), this Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citation omitted). For a complaint to be adequate, it must be "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing Fed. R. Civ. P. 8(a)(2)). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Id.*; *see also Phillips*, 515 F.3d at 232. If the "well pleaded facts do not permit the court

3

to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to show "that the pleader is entitled to relief" as required by Rule 8(a)(2). *W. Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169–70 (3d Cir. 2013).

## IV. DISCUSSION

Plaintiff does not deny the existence of an arbitration agreement or that she signed it but rather, she challenges its validity and scope. Thus, the standard to be applied here is Rule 12(b)(6). As such, the Court will first address the scope of the arbitration agreement.

### A. Scope of Arbitration agreement

When considering a motion to compel arbitration, this Court considers: "(1) whether the parties entered into a valid arbitration agreement; and (2) whether the dispute at issue falls within the scope of the arbitration agreement." *Noonan v. Comcast Corp.*, No. 3:16-CV-00458 (PGS), 2017 WL 4799795 at * 4 (D.N.J. Oct. 24, 2017) (citing *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009)). "[W]hen determining whether [a] particular dispute falls within a valid arbitration agreement's scope, 'there is a presumption of arbitrability[:] an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Id.* (quoting *Century Indem. Co*, 584 F.3d at 524) (internal citation omitted).

CVS argues that Plaintiff's gender-based discrimination claims all arise out of her employment with CVS and therefore fall within the scope of the arbitration agreement. (D.E. 9 at 6.) The arbitration agreement contains a "claims covered by this policy" provision which provides:

> Covered Claims are any and all legal claims, disputes or controversies that CVS Health may have, now or in the future, against an Employee or that an Employee may have, now or in the future, against CVS Health, its parents, subsidiaries, successors or affiliates, or one of its employees or agents, arising out of or related to the Employee's employment with CVS Health or the termination of the

4

> Employee's employment. Covered Claims include but are not limited to disputes regarding . . . leaves of absence, harassment, discrimination, retaliation and termination arising under the Civil Rights Act of 1964, Americans with Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act . . . and other federal, state and local statutes, regulations and other legal authorities relating to employment. Covered Claims also include disputes arising out of or relating to the validity, enforceability or breach of this Policy, except as provided in the section below regarding the Class Action Waiver.

(D.E. 9 at 2–3.)

Conversely, Plaintiff, quoting the elements of gender discrimination,[1] argues that the complaint sufficiently alleges that "Defendants targeted [her] with severe and pervasive negative treatment, intentionally because she is a woman." (D.E. 11 at 1) (internal citation omitted) (cleaned up). She relies on *Bibby v. Philadelphia Coca Cola Bottling Co.,* and asserts that because Patel's general hostility toward her was based on her gender that, constitutes sexual harassment in violation of Title VII. (*Id.* at 2 (quoting 260 F.3d 257, 262 (3rd Cir. 2001)). She concludes that because her gender-based discrimination claims are in fact sexual harassment claims, the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFAA") permits her to circumvent arbitration and pursue her claims in court. (D.E. 11 at 1 (citing 9 U.S.C. Section 402)).

The EFAA is a significant act that "rightfully pulls back on the long-held presumption towards arbitration where sexual harassment is concerned." *Steinberg v. Capgemini Am., Inc.*, No. CV 22-489, 2022 WL 3371323* at 2 (E.D. Pa. Aug. 16, 2022). "The EFAA provides that 'at the election of the person alleging conduct constituting a sexual harassment dispute . . . no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed under Federal [or] State law and relates to the . . . sexual harassment dispute.'" *Id.* (quoting

---

[1] *See Minarsky v. Susquehanna Cnty.*, 895 F.3d 303, 310 (3d Cir. 2018) (quoting *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013)).

5

9 U.S.C. § 402(a)). "In doing so, the EFAA unequivocally ends the era of employers being able to unilaterally compel arbitration in sexual harassment cases." *Id.*[2] Notably, for the purposes of a Title VII claim, sex discrimination differs from sexual harassment. "Sex discrimination is discriminating against someone because of his or her sex, while sexual harassment is unwelcome sexual advances or other verbal or physical contact of a sexual nature." *Friel v. Mnuchin*, 474 F. Supp. 3d 673, 692 (E.D. Pa. 2020). *Bibby* does not contradict this distinction. *See* 260 F.3d at 262. Indeed, in *Bibby* the Third Circuit addressed the specific issue of same-sex gender discrimination. *Id.* There, the Third Circuit acknowledged that showing gender discrimination is not always easy in same-sex situations. It explained that in opposite sex situations "it is easy to conclude or at least infer that [proposals of sexual activity] is motivated by [a person's] sex" *i.e.*, gender, "[s]imilarly, if a man is aggressively rude to a woman, disparaging her or sabotaging her work, it is possible to infer that he is acting out of a general hostility to the presence of a woman in the workplace. These inferences are not always so clear when the harasser and victim are the same sex." *Id.* Curiously, Plaintiff relies on the *Bibby* Court's statement that "harassment might be present where there is no sexual attraction but where the harasser displays hostility to the presence of a particular sex in the workplace" as a way to argue that Patel's hostility toward her was because she was a woman and thus was a form of "sexual harassment." (D.E. 4 at 8 (quoting *Bibby,* 260 F.3d at 262)). However, it is clear that the Third Circuit's use of the phrase "sex harassment" in that case is interchangeable with the phrase "gender discrimination" and its use of

---

[2] 9 U.S.C. Section 402(a) . . . the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute . . . no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute; (b) . . . [a]n issue as to whether this chapter applies with respect to a dispute shall be determined under Federal law. The applicability of this chapter to an agreement to arbitrate and the validity and enforceability of an agreement to which this chapter applies shall be determined by a court, rather than an arbitrator, irrespective of whether the party resisting arbitration challenges the arbitration agreement specifically or in conjunction with other terms of the contract containing such agreement, and irrespective of whether the agreement purports to delegate such determinations to an arbitrator.

"sex harassment" did not suggest that the plaintiff's gender or "sex-based" discrimination claims were automatically converted to sexual harassment claims. Nor is that the case here.

Plaintiff does not allege sexual harassment claims in her complaint nor does she allege facts to suggest that Patel's actions were sexually motivated. Indeed, the three-count complaint specifically alleges gender discrimination claims and facts to support discrimination based on sex. The complaint does not include a sexual harassment claim or allege any facts to suggest that Defendants engaged in unwelcomed sexual advances or behavior motivated by a sexual desire. Consequently, Plaintiff's argument that the alleged discrimination amounts to sexual harassment and thus is not subject to the arbitration agreement are unsupported and unpersuasive. Therefore, her claims are not subject to the EFAA and are not excused from arbitration. This Court now turns to whether the arbitration agreement itself is valid and enforceable.[3]

### B. Enforceable Contract

Defendants argue that the arbitration agreement is a valid contract because "it notified Plaintiff of the [arbitration agreement] through the Arbitration Training Course (which she completed on October 8, 2014); made the Arbitration Policy Guide available to her at no cost; offered her the opportunity to opt-out with express instructions on how to do so; assured her that if she opted out, there would be no repercussion or retaliation; and informed her that, if she did not opt-out, her continued employment would constitute acceptance of CVS's offer to arbitrate." (D.E. 9 at 12.) Defendants contend that "[Plaintiff] had the opportunity to accept or reject the offer, with no adverse consequences if she chose to opt-out [thus], [b]y continuing her employment and choosing not to opt-out," Plaintiff accepted CVS's offer and became bound by the arbitration agreement. (*Id.*)

---

[3] Plaintiff also argues that her claims arose after the enactment of the EFAA but since her claims are not subject to the EFAA, it is of no moment for purposes of this analysis.

Plaintiff, on the other hand, argues that the arbitration agreement is not valid because there was never a meeting of the minds. (D.E. 11 at 8.) She argues that the agreement was "confusingly embedded in the training but not viewable contemporaneously with it." (*Id.* at 11) (internal quotation omitted.) Thus, by clicking "yes" she was not aware that she was agreeing to the arbitration agreement. (*Id.* at 8.) She also asserts that the opt-out provision was not consistent throughout the training platform and that the thirty-day window of time to opt-out was unreasonable. (*Id.* at 27.)

The Federal Arbitration Act provides that arbitration agreements "shall be binding" and permits courts to stay proceedings in any matter referable to arbitration. 9 U.S.C. §§ 2, 3, 4. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Beery v. Quest Diagnostics, Inc.*, 953 F. Supp. 2d 531, 537 (D.N.J. 2013) (*quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

Further, failure to opt-out of an arbitration agreement after receiving notice may be considered a valid acceptance of the agreement. *See Jayasundera v. Macy's Logisitics & Operations, Dep't of Hum. Res.*, No. 14-CV-7455, 2015 WL 4623508* 4 (D.N.J. Aug. 3, 2015) (holding that the arbitration agreement was valid because the plaintiff received the agreement and relevant material, was on notice that she must opt-out within thirty days, failed to opt-out and instead continued her employment.).

Here, CVS made an offer to enter an arbitration agreement by notifying Plaintiff of the Arbitration Policy through the Arbitration Training Course. (D.E. 9 at 11.) Plaintiff acknowledged electronic receipt of the arbitration agreement and relevant material; she completed the course; and assented electronically when prompted to do so. Plaintiff did not opt-out of the agreement and

8

continued her employment for years beyond that point. Accordingly, the arbitration agreement was entered into voluntarily.

Finally, Plaintiff argues that the arbitration agreement is unenforceable because it is a contract of adhesion and "therefore necessarily involves indicia of procedural unconscionability." (D.E. 11 at 24) (*citing Rodriguez*, 225 N.J. at 366-67.) She asserts that "Defendants' purported arbitration [agreement] not only permitted no opportunity for negotiation but purported to bind [her] instantly merely because she viewed or received it—a procedurally unconscionable bargaining tactic if there ever was one." (*Id.*) (internal citation omitted) (cleaned up).

The Third Circuit has observed that the contractual doctrine of unconscionability "involves both 'procedural' and 'substantive' elements," and "requires a two-fold determination: that the contractual terms are unreasonably favorable to the drafter and that there is no meaningful choice on the part of the other party regarding acceptance of the provisions." *Vilches v. The Travelers Companies, Inc.*, 413 F. App'x 487, 493 (3d Cir. 2011) (citing *Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269, 277 (3d Cir. 2004). In addressing a claim that an arbitration clause is unconscionable, courts apply the ordinary state law principles of the involved state or territory. *Id.* (citing *Nino v. Jewelry Exchange, Inc.*, 609 F.3d 191, 200 (3d Cir.2010)). Thus, in New Jersey, "adhesion contracts invariably evidence some characteristics of procedural unconscionability," and "a careful fact-sensitive examination into substantive unconscionability is generally required." *Id.* (quoting *Moore v. Woman to Woman Obstetrics & Gynecology, LLC*, 3 A.3d 535, 540 (2010)). However, an arbitration agreement that "expressly provides in multiple places that the decision to arbitrate is optional and will not negatively affect a person's employment status with Defendants" is not a contract of adhesion. *See Allen v. Bloomingdale's, Inc.*, 225 F. Supp. 3d 254, 261 (D.N.J. 2016) (granting motion to compel arbitration finding that the wording of the arbitration agreement

9

"provided plaintiff with sufficient notice at the time she signed [it] that all claims relating to employment with and termination from [Defendants] would be resolved through arbitration." It determined that "[c]ompelling arbitration under these circumstances is fair and equitable" and thus held that the agreement was enforceable) (internal citation omitted).

Here, the agreement was not one-sided but rather binding on *both* parties. Indeed, the "Mutual Obligation to Arbitrate" clause provided, in relevant part:

> Under this Policy, CVS Health (including its subsidiaries) and its Employees agree that any dispute between an Employee and CVS Health that is covered by this Policy ("Covered Claims") will be decided by a single arbitrator through final and binding arbitration only and will not be decided by a court or jury or any other forum, except as otherwise provided in this Policy. This Policy is an agreement to arbitrate disputes covered by the Federal Arbitration Act (9 U.S.C. §§ 1-16). Employees accept this Policy by continuing their employment after becoming aware of the Policy.

(D.E. 9-2 at 2.)[4]  Further, the agreement provided an opt-out provision whereby Plaintiff would have been released from the arbitration agreement by mailing in a "written, signed and dated letter stating clearly that . . . she wishes to [opt-out] of the [agreement]." within thirty-days of first viewing or receiving the agreement. (*Id.* at 4.) A physical copy of the arbitration agreement was available to Plaintiff, and she also successfully completed CVS's LEARNet Arbitration Training Course. By clicking "yes," she acknowledged and agreed that she: carefully read the agreement and understood that it applied to her; had the opportunity to opt-out of the agreement and, by doing so, not be bound by its terms; was aware that to opt-out, she must have mailed a written, signed and dated letter; was aware that being covered by the agreement and not opting out, she and CVS were both obligated to go to arbitration instead of court to resolve legal claims covered by the agreement; was aware that the electronic communication satisfie[d] any requirement that such

---

[4] *Jayasundera v. Macy's Logisitics & Operations, Dep't of Hum. Res.*, No. 14-CV-7455, 2015 WL 4623508* 4 (D.N.J. Aug. 3, 2015) (finding that sufficient consideration for the arbitration agreement existed because the agreement mutually obliged the parties to arbitrate all employment disputes).

10

communication be in writing; and that by clicking the "yes" button, she created an electronic signature that is legally binding. (D.E. 9-2 at 4 and Exhibit B, slide 5 of 6.) Plaintiff was also informed that there would be no repercussion or retaliation or adverse consequence if she chose to opt-out. By these terms, the arbitration agreement was not a contract of adhesion but rather a valid and enforceable agreement.

### V. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss the Complaint and compel arbitration is **GRANTED WITHOUT PREJUDICE.** An appropriate order follows.

                                                 /s/ Susan D. Wigenton  
                                                 **SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk  
cc:     Parties  
       Andre M. Espinosa, U.S.M.J.